UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARLA ROSE MILLER,

     Plaintiff,

     v.                          Case No. 3:22-CV-883 JD

TODD ROKITA, et al.,

     Defendants.

## OPINION AND ORDER

Defendants, Todd Rokita, Terry C. Shewmaker, and Vicki Elaine Becker, ("State Defendants") have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (DE 30). The motion will be granted for the following reasons.

### A. Factual Background

The plaintiff, Marla Miller, proceeding *pro se*, initiated this litigation with a 25-page complaint.[1] (DE 1.) This document describes many hardships Ms. Miller has endured in her life, and requests this Court to restore her custody of her children and award her $10,000,000 in damages for the allegedly unlawful deprivation of custody. (DE 1 at 3).

---

[1] The Court would note that at various places in her filings Ms. Miller indicates that she believes this process is something other than litigation and the civil complaint she filed is actually some other type of document called a "notice of liability." *See e.g.* DE 1 at 12 (describing the complaint as a "notice of liability" and demanding Defendants sign the document to "prevent current and future damages"); DE 23 at 2 ("a Notice of Liability is not a lawsuit, rather it is a statement of potential liability"); DE 39 at 2 ("this was not supposed to go into litigation as I am pro se and this was already stated to be an affidavit of harm and liability"). Regardless of her terminology and intention, the Court will clarify this is indeed a lawsuit and Ms. Miller has initiated litigation against the defendants when she named them as defendants in a civil complaint. *See* DE 1 at 1–3 (completed civil complaint form for a pro se plaintiff). Accordingly, this claim is subject to all relevant statutes and rules including the Federal Rules of Civil Procedure.

As relevant background to this motion, Ms. Miller alleges she had a difficult upbringing which involved alleged sexual harassment by her brother-in-law, disbelief of her claims by her family, involvement of her church in her claims, and intermittent stays at mental health care centers or treatment facilities at the direction of her family and church. (DE 1 at 7–8.) Ms. Miller indicates she became pregnant with her first child when she was seventeen years old "to get off all the pills they were drugging [her] with" and then got married six months later. (DE 1 at 8). Ms. Miller then left an abusive marriage and got a job. *Id.* During this time, she asked her sister, Defendant Lori Zimmerman to babysit for her. *Id.* Ms. Zimmerman convinced Ms. Miller that it would be best to leave the children with her for temporary stability. *Id.* at 9.

Thereafter, Ms. Zimmerman and her husband Trenton Zimmerman began to ask for legal guardianship of the children. *Id.* The Zimmermans explained to Ms. Miller that they believed her children needed stability and a mom and dad. *Id.* Ms. Miller alleges she was being intimidated and bullied by the Zimmermans into supporting the adoption, with actions such as threatening to return the children to the custody of Ms. Miller's ex-husband. *Id.*

Ms. Miller decided to go through with the adoption to give legal guardianship of her children to the Zimmermans. *Id.* at 9. Ms. Miller alleges she did not have counsel during the adoption and did not understand the legal consequences of the action. *Id.* She indicates that she believed it would be an open adoption and she would continue to have a relationship with her children. *Id.* She alleges that the adoption was approved on October 25, 2013. *Id.* at 11. Further, that following the adoption the Zimmermans prevented her from having a relationship with her children despite her efforts to do so. *Id.* at 10. Ms. Miller alleges that she was bullied and

manipulated into relinquishing the custody of her children and generally asserts that her rights were violated because her children were adopted. *Id.* [2]

In seeking redress for these alleged wrongs Ms. Miller filed this lawsuit naming several defendants, three of whom have filed the instant motion to dismiss. These defendants are Indiana Attorney General Todd Rokita, Elkhart County Prosecuting Attorney Vicki Becker, and Terry Shewmaker who is a former Judge of the Elkhart County Circuit Court. From Ms. Miller's complaint it appears that Judge Shewmaker was the judicial officer who approved the adoption of her children by Lori and Trenton Zimmerman on October 25, 2013. (DE 1 at 10–11.) Attorney General Rokita's involvement in this situation is unclear, besides Ms. Miller's assertion that he has "Command Responsibility" over state agencies such as the "Department of Child and Family Services." DE 1 at 14. It is even less clear what role Prosecuting Attorney Becker played in these events as Ms. Miller makes no factual allegations about her role or otherwise describes her theory of liability against Becker.

### B. Legal Standard

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must

---

[2] These are the same facts alleged against the other defendants in this case, and included in the Court's orders on their respective motions to dismiss. The Court has included the same factual background in each order for the sake of completeness.

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Abstention arguments under *Rooker-Feldman* implicate a court's jurisdiction. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc*., 953 F.3d 469, 475 (7th Cir. 2020); *Salem v. Larkin*, 2022 WL 17176496, at *3 (N.D. Ill. Nov. 23, 2022). Arguments for abstention "do not fit neatly into Rule 12(b)(1) or Rule 12(b)(6)." *Whole Woman's Health All. v. Hill*, 377 F. Supp. 3d 924, 930 (S.D. Ind. 2019). "Such arguments do not deny the existence of subject-matter jurisdiction; they presuppose it." *Id*. However, "when such a motion "asks the Court to decline jurisdiction, as defendants' motion does, it fits more comfortably under Rule 12(b)(1)." *Nadzhafaliyev v. Hardy*, 403 F. Supp. 3d 663, 667 (N.D. Ill. 2019).

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Because this case challenges the factual circumstances of jurisdiction rather than solely the pleading of jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the

issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

### C. Discussion

The State Defendants argue the claims against them should be dismissed based on the *Rooker-Feldman* doctrine, based on Plaintiff's failure to state claims against Mr. Rokita and Ms. Becker and because Mr. Shewmaker is not a proper defendant under Title II of the Americans with Disabilities Act.[3]

### (1) *It is unclear at this stage if Rooker-Feldman abstention applies*

The State Defendants argue that the *Rooker-Feldman* doctrine precludes the Court from exercising jurisdiction over this case. However, due to gaps in their briefing and ambiguities in the factual allegations of the complaint, the Court cannot conclude at this time that *Rooker-Feldman* applies.

Under the *Rooker-Feldman* doctrine, federal courts do not have jurisdiction to review or reverse orders issued in state court or state administrative proceedings. *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 869, 900 (7th Cir. 2010). This doctrine prevents a person who lost in state court from bringing suit in federal court in order to set aside the state court judgment. *Id.* A plaintiff cannot evade this bar by "casting [her] complaint in the form of a civil rights action." *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993). Relevant to this case, when "the [party's] injury is executed through a court order, there is no conceivable way to redress the wrong without

---

[3] The State Defendants do not raise prosecutorial immunity or judicial immunity in their briefing, and the Court declines to raise these arguments on their behalf.

overturning the order of a state court" and "*Rooker-Feldman* does not permit such an outcome." *Sykes v. Cook Cty. Circuit Court Probate Div.*, 837 F.3d 736, 743 (7th Cir. 2016).

However, *Rooker-Feldman* does not apply when plaintiffs seek damages for injuries caused by the fraudulent conduct of state court opponents, nor does it bar federal suits seeking damages for fraud or other unlawful conduct that misled the state court into issuing a judgment adverse to a federal plaintiff. *Hadzi-Tanovic*, 62 F.4th at 406–07. So, while the doctrine might bar elements of a lawsuit seeking to overturn a state court judgment, claims seeking damages based on fraudulent conduct by opponents in the proceedings leading up to that judgment may nonetheless be viable.[4]

To determine whether *Rooker-Feldman* applies to Ms. Millers' claims against the remaining State Defendants, requires applying a two-step analysis. *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2021). The first step is for the court to determine whether a plaintiff's federal claims are "independent" of a state court action, or whether they directly challenge a state court action or are "inextricably intertwined with one." *Id.* (quoting *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019)). If the plaintiff's claims are a direct challenge or inextricably intertwined with state court proceedings, then the federal court advances to step two of the *Rooker-Feldman* analysis. *Id.* At the second step, the court determines whether the plaintiff had the reasonable opportunity to raise the issue in state court proceedings. *Id.* (citing *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017)). If the plaintiff had such an opportunity, then *Rooker-Feldman* strips the federal court of jurisdiction.

---

[4] In all instances, this doctrine bars the Court from granting Ms. Miller the relief of restored custody over her children. *Sykes*, 837 F.3d at 743.

Ms. Miller's claim satisfies the first step of this analysis. Ms. Miller's claims directly challenge the state court adoption proceeding as she seeks to overturn that decision, and her theory of a conspiracy by the defendants to bring about that judicial decision are inextricably intertwined with that proceeding. The Court is unable to evaluate her claims without rendering an opinion on the merits of the state court judgement, specifically whether it was brought about in accordance with the proper application of state law or rather was a result of a conspiracy by the defendants to defraud or corrupt the state court. *See Hadzi-Tanovic*, 62 F.4th at 398–99 (finding that an alleged §§ 1983, 1985 conspiracy against plaintiff's ex-husband, the state court judge, and the guardian ad litem to deprive plaintiff of child custody would require a federal court to "examine and criticize" the state court's application of family law and find that official actions of the judge and guardian were part of a conspiracy.)  That said, it is unclear from the record and the parties' briefing as to whether the second step is satisfied.[5] In determining whether Ms. Miller had a reasonable opportunity to raise the issue in state court, the focus of the inquiry is on the difficulties caused by state court rules or procedures and not difficulties caused by opposing parties. *Hadzi-Tanovic*, 62 F.4th at 408.

Ms. Miller's complaint alleges she was not present during the adoption proceeding, that she was never served regarding the proceeding, and had no awareness it was being held. (DE 1 at 11.) The Court is obligated under the standard of Rule 12(b)(1) to treat these factual allegations as true. *Ezekiel*, 66 F.3d at 897. Her inability to be present during or even aware of a court proceeding clearly precludes finding Ms. Miller had a reasonable opportunity to present her

---

[5] Several Defendants raised *Rooker-Feldman* in their motions to dismiss but none correctly articulated the two-step legal standard and no defendant briefed whether step two was satisfied. (*See, e.g.,* DE 33 at 7–8 (Zimmerman brief).)

claim[6] before a state court. *See Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002) (finding that a juvenile plaintiff who was a party, but was unrepresented and not personally present, during juvenile court wardship hearing did not have a reasonable opportunity to raise her constitutional claims). That being said, it is unclear why Ms. Miller allegedly had no notice of the proceeding and whether that was due to state court procedure or interference of opposing parties. Without clear evidence in the record, the Court is obligated at this stage of the proceedings to draw the inference in Ms. Miller's favor and conclude she lacked the opportunity because of state court rules or procedures.[7] *Id.* As a result, the Court finds that the second element of *Rooker-Feldman* is not satisfied, and the doctrine does not preclude jurisdiction on Ms. Miller's claims for damages against Attorney General Rokita and Prosecuting Attorney Becker who allegedly engaged in the tortious acts and fraud prompting the state court custody judgment.

### (2) *It is unclear at this stage whether the affirmative defense of the statute of limitations applies*

The State Defendants also argue that the statute of limitations bars Ms. Miller's claims because the adoption of her children was finalized on October 25, 2013.

---

[6] The claim Ms. Miller presumably would have raised before the state court is that she should retain custody because she was being manipulated by the conspiracy into supporting the adoption or that the state court was being misled by the actions of the conspirators.

[7] While no party has briefed step two of the *Rooker-Feldman* analysis, defendant Randy Spitaels' motion to dismiss includes the purported docket sheet for the custody case. (DE 18-1.) This sheet includes an entry for November 15, 2012, that the mother in that case, Marla Cable, was served by the Kosciusko County Sheriff (*Id.* at 3.) The Court will not rely on this document to conclude Ms. Miller was served because while the custody order was entered by Judge Terry Shewmaker, it was entered on a different date than the one alleged in the complaint (November 20, 2012, as opposed to October 25, 2013) and it is unclear from the rest of the record if Marla Cable and Marla Miller are the same person.

The Court will begin by noting that the statute of limitations is an affirmative defense which does not need to be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). It is generally only appropriate to grant a motion to dismiss based on the statute of limitations when the plaintiff plead themselves out of court by pleading facts that establish an impenetrable defense to their claim. *Dobbie v. Bremen Police Dep't.*, 341 F. Supp. 3d 896, 901 (N.D. Ind. 2018) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)). As will be explained below, the allegations of the complaint contain factual ambiguities which preclude applying the statute of limitations at this time.

Determining whether the statute of limitations has run first requires determining what law the plaintiff is seeking relief under. Ms. Miller's complaint mentions 42 U.S.C. §§ 1983, 1985, and 1986, and Title II of the Americans with Disabilities Act. Ms. Miller also generally alleges violations of her constitutional rights and a conspiracy by the defendants to violate her rights by causing the adoption of her children. Ms. Miller also generally alleges all the named Defendants engaged in fraud during the conspiracy. (DE 1 at 10, 11–12). According to the complaint, the adoption proceedings which undergird Ms. Miller's claims were finalized on October 25, 2013. (DE 1 at 11.) This lawsuit was filed just shy of nine years later on October 19, 2022. (DE 1.)

Section 1983 actions are generally governed by the forum state's personal injury statute of limitations. *Campbell v. Forest Pres. Dist. of Cook Cty.*, 752 F.3d 665, 668 (7th Cir. 2014). This means the statute of limitations for a § 1983 claim in Indiana is two-years.[8] *Dobbie*, 341 F.

---

[8] The State Defendants brief refers to the Indiana state law setting the statute of limitations on challenging adoption proceedings, which is either 6 months or 1 year. The State Defendants however do not explain why this particular statute of limitations should be applied to Ms. Miller's § 1983 claims, as such the Court applies the governing precedent. The exact length of the statute of limitations does not impact the analysis elsewhere in the order on how the factual ambiguity of when Ms. Miller discovered the injury makes applying the statute of limitations inappropriate at this time.

Supp. 3d at 901. The same two-year statute of limitations applies to claims brought under §§ 1981 and 1985. *Sims v. Kernan*, 72 F. Supp. 2d 944, 948 (N.D. Ind. 1999). A two-year statute of limitations also applies to claims brought under the ADA. *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996). The ADA statute of limitations period begins to run at the time of the discriminatory act, not when the act's consequences begin to be felt. *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258–59 (1980)). Section § 1986 claims must be brought within one year of the occurrence. 42 U.S.C. § 1986. Indiana state law imposes a six-year statute of limitations to claims of fraud. Ind. Code § 34-11-2-7.

However, federal law, not state law, governs the accrual of a cause of action under §§ 1983, 1985 and 1986. *Dobbie*, 341 F. Supp. 3d at 901 n.2; *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Generally, a claim under § 1983 accrues when "the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Towne v. Donnelly*, 44 F.4th 666, 670 (7th Cir. 2022) (internal quotations and citations omitted).[9] It is at that point; the plaintiff knows or should know that her constitutional rights have been violated. *Id.* (internal citations omitted). The same is true for §§ 1985 and 1986 claims as well. *Seegers v. Jasper Cty.*, 2021 WL 411156, at *7 (N.D. Ind. Feb. 5, 2021) (allegation of a conspiracy claim under § 1985 does not extend the limitations period or delay accrual of claims); *Bedree v. Est. of Lebamoff*, 2008 WL 756161, at *3 n.2 (N.D. Ind. Mar. 21, 2008) (a § 1986 claim is reliant on the presence of a viable § 1985 claim).

---

[9] It currently appears unsettled in the Seventh Circuit whether the loss of child custody constitutes a continuing violation which may extend the statute of limitations. *See Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 823 (7th Cir. 2022) (declining to address the issue as it was waived on appeal). The Court has no occasion to address the issue now, but any future briefing on the statute of limitations question should consider this question.

While the State Defendants maintain that Ms. Miller should have known of her injury on October 25, 2013, the facts contained within her complaint are ambiguous.[10] Specifically, Ms. Miller claims she was unaware that the adoption proceeding took place. (DE 1 at 11). While this statement is potentially contradicted by another allegation in the complaint suggesting she knew of the injury almost right away, at most this creates a factual ambiguity over when Ms. Miller discovered her injury. (*See id. at* 9 ("as soon as the adoption went through, everything we agreed on was not honored").)   Regardless of which allegation is accurate, the fact there is an ambiguity about when Ms. Miller knew or should have known of her constitutional injury makes dismissing her civil rights claims on statute of limitation grounds inappropriate at this time. *Dobbie*, 341 F. Supp. 3d at 901.

For largely the same reasons, dismissing the ADA claims on statute of limitations grounds is also inappropriate at this time. The standard for ADA claim accrual is that the "discovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations [for ADA claims] begins to run." *Soignier*, 92 F.3d 547 at 552 (citing *Ricks*, 449 U.S. at 258). As such, the ambiguity regarding Ms. Miller's discovery of the injury precludes applying the statute of limitations defense at this time.

### (3) *Ms. Miller has failed to state a claim against Attorney General Rokita and Prosecuting Attorney Becker*

---

[10] The State Defendants motion does not meaningfully discuss accrual, and instead conclusively asserts the cause of action accrued with the adoption.

Ms. Miller's complaint fails to state a claim upon which relief can be granted against Attorney General Rokita or Prosecuting Attorney Becker and therefore her claims against these two individuals must be dismissed without prejudice.

A plaintiff is required to provide grounds for her entitlement to relief with more than mere labels and conclusions. *Twombly*, 550 U.S. at 555. Rather, she must plead sufficient factual content to allow the Court to draw a reasonable inference that the named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663.

### (a) *Prosecuting Attorney Becker*

Ms. Miller's complaint only mentions Prosecuting Attorney Becker in the caption and does not mention her, or her actions, at all in the body of the complaint. This is insufficient to state a claim under Rule 8. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."); *see also Kaiser v. Tiggs Canteen Service, Inc.*, 2021 WL 2138469, at *3 (N.D. Ind. May 26, 2021) (dismissing a § 1983 claim against a defendant who was listed in the caption but not mentioned in the body of the complaint). Further, Prosecuting Attorney Becker would not be a proper defendant under the Americans with Disabilities Act[11] as only public entities, and not individuals, are proper defendants under this statute.[12] *Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1004 (N.D. Ill. 2019) (internal citations omitted).

---

[11] The Court notes that Ms. Miller has not identified what her disability is or how the defendants discriminated against her based on that disability.

[12] Ms. Miller makes no factual allegations suggesting she sought to sue the Office of the Prosecuting Attorney or Ms. Becker in her official capacity.

(b) *Attorney General Rokita*

Unlike Prosecuting Attorney Becker, Attorney General Rokita is briefly mentioned in the body of the complaint but not sufficiently to state a claim. Ms. Miller only briefly refers to the Attorney General by a conclusory statement assigning him "command responsibility" for the acts of other, unspecified state agents. (DE 1 at 14). Not only is this insufficient to allow an inference of Mr. Rokita's liability for the misconduct alleged, but it is also insufficient to plead a § 1983 or § 1985 claim. Personal involvement of the named defendant is an essential element of every claim under § 1983. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (Holding the doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate which violates an individual's constitutional rights, rather, to establish supervisory liability a plaintiff must show the supervisor had personal involvement in the unconstitutional conduct). Absent factual allegations regarding the Attorney General's personal involvement, Ms. Miller cannot bring a civil rights claim against him based on acts of his subordinates or other agents of the State of Indiana. Further, Attorney General Rokita, as an individual, is not a proper defendant under the Americans with Disabilities Act. *Ravenna*, 388 F. Supp. 3d at 1004.

(4) ***The domestic relations exception bars the Court from hearing Ms. Miller's claims against Judge Shewmaker, she has failed to state a claim against him, and he is not a proper ADA defendant***

As previously discussed, the abstention doctrine known as *Rooker-Feldman* cannot yet be applied in this case. However, the domestic relations exception to federal jurisdiction does deprive this court of jurisdiction and requires the dismissal of the claims against Judge Shewmaker. Further, Judge Shewmaker is not a proper defendant under the ADA.

The Court raises the domestic relations exception *sua sponte* in this order out of its legal obligation to police its own jurisdiction.[13] *Evergreen Square of Cudahy v. Wis. Hous. and Econ. Dev. Auth.*, 776 F.3d 463 (7th Cir. 2015) (federal courts are obligated to *sua sponte* inquire about jurisdiction).

The domestic relations exception covers a narrow range of domestic relations issues involving "granting of divorce, decrees of alimony, and child custody orders." *Kowalski v. Boliker*, 893 F.3d 897, 995 (7th Cir. 2018). This exception, however, does not bar suits seeking damages against individuals who interfered with a plaintiff's rights in a tortious manner. *Id.* at 996. Therefore, while it would bar claims against the court and its officers taken in the course of adjudicating a custody action, it does not bar claims against outside actors who allegedly interfered in Ms. Miller's case. *Id.*

Consequently, this exception deprives the Court of jurisdiction to overturn the state court custody order or to hear claims against Terry Shewmaker for his actions as the judge adjudicating that case. The claims against Mr. Shewmaker must therefore be dismissed without prejudice. *Id.* at 994–95.[14]

Further, in the alternative, Ms. Miller has failed to state a claim against Judge Shewmaker. Ms. Miller's only factual allegations against Judge Shewmaker are that he was the judicial officer who approved the adoption of her children. Ms. Miller also states in a conclusory

---

[13] The Court notes the domestic relations exception is also raised in the motions to dismiss filed by other defendants.

[14] The Court recognizes that *sua sponte* dismissals without briefing by the parties are generally disfavored. *Kowalski*, 893 F.3d at 996–97. There is however a narrow exception for "certain patently frivolous attempts to invoke federal jurisdiction. *Id.* (citing *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993)). *English* further states "Unless a claim is frivolous, it is rudimentary that a court cannot *sua sponte* enter summary judgment or dismiss a complaint without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or to respond." *Id.* As the domestic relations exception invokes a bar to federal jurisdiction and the Court will grant Ms. Miller leave to file an amended complaint, it finds the *sua sponte* dismissal of her claim in this order to be appropriate.

manner that he was in agreement with the other defendants to conspire against her, but provides

no specific allegations of actions he took. (*See* DE 1 at 14.) Such conclusory allegations fail to

state a claim as they do not describe what actions he actually took to cause her injury.

Additionally, Judge Shewmaker as an individual is not a proper defendant under the Americans

with Disabilities Act. *Ravenna*, 388 F. Supp. 3d at 1004. As such, the Court would be forced to

dismiss Ms. Miller's claims against Judge Shewmaker even if it had jurisdiction.


   **(5)** ***The Court would decline to exercise supplemental jurisdiction over any state***
***law claims against the State Defendants***

   The Court will decline to exercise supplemental jurisdiction over any state law claims

against the State Defendants. The complaint is not entirely clear what state law claims Ms. Miller

is raising, but she may be alleging fraud and defamation in regard to the adoption proceeding.

Given the dismissal of Ms. Miller's federal law claims against these defendants, which deprives

the Court of federal question jurisdiction, and the lack of diversity jurisdiction in this case, the

only basis left for jurisdiction would be supplemental jurisdiction. The Court declines to exercise

supplemental jurisdiction over any state law claims which may be in the complaint and dismisses

them without prejudice. *See RWJ Mgmt. Co., Inc. v. BP Prod. N. Am., Inc.*, 672 F.3d 476, 479–

80 (7th Cir. 2012) (noting there is a presumption that district courts decline to exercise

supplemental jurisdiction over state law claims after dismissing federal claims and otherwise

lacking jurisdiction).


   **D. Conclusion**

Accordingly, the State Defendants' motion to dismiss is GRANTED (DE 30). The complaint's claims against the State Defendants are STRICKEN, and Ms. Miller is granted 30 days to file an amended complaint. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018) (pro se plaintiffs should ordinarily be afforded leave to amend when their complaint is dismissed). Any amended complaint should clearly articulate what actions were taken by each named defendant, and how those actions caused Ms. Miller's injury. Further, to the extent possible, it should include specific details such as dates of the actions.

The Court CAUTIONS Ms. Miller that failure to file an amended complaint could result in the dismissal of her claims, and case, without further notice. Further, this dismissal may be with prejudice. *See Griffin v. Milwaukee Cty.*, 369 Fed. App'x 741, 743 (7th Cir. 2010) (unpublished) ("A court is free to dismiss a complaint with prejudice when the plaintiffs have been given opportunities to amend, but fail to do so.").

SO ORDERED.

ENTERED: July 12, 2023

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court